FILED

2020 Dec-07  AM 11:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **PHILLIP ODOM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **6:19-cv-02040-CLM** |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Phillip Odom seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Odom's application in an opinion written by an Administrative Law Judge ("ALJ"). Odom argues that: (1) the ALJ failed to adequately assess evidence from Odom's treating sources; (2) the ALJ failed to properly evaluate Odom's credibility; and (3) the ALJ failed to classify Odom's migraines as a severe impairment.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

## I.     Statement of the Case

### A.     Odom's Disability, as told to the ALJ

Odom was 50 years old at the time of the ALJ's decision. R. 44, 46. Odom graduated high school and studied drafting for a few semesters at Bell State. R. 48. Odom's only past relevant work was as a drafter. R. 64.

At the ALJ hearing, Odom testified that he had a heart attack in April 2016, suffered injuries from two car wrecks in 2009 and 2014, and has recently seen his weight shot up. R. 49–50. Odom also testified that he had a pulmonary embolism and that his injuries have gotten worse over the years. R. 50–51.

Odom relies on his children to go grocery shopping for him and to clean their house. R. 57–58. And he spends most of his day sitting around and watching TV. R. 58. But Odom can make simple meals for himself. R. 57.

### B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |

| | *Determine Residual Functional Capacity* | |
|---|---|---|
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Odom's residual functional capacity is the most important step here, as almost all of Odom's challenges flow from the ALJ's decision at this juncture.

## C.    Odom's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Odom applied for a period of disability and disability insurance benefits in September 2016, claiming that he was unable to work because of various ailments,

including morbid obesity, degenerative disc disease, ischemic heart disease, pulmonary embolism, acute kidney injury, migraines, and hypertension. After receiving an initial denial in October 2016, Odom requested a hearing, which the ALJ conducted in November 2018. The ALJ ultimately issued an opinion denying Odom's claims in January 2019. R. 7–19.

At Step 1, the ALJ determined that Odom was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 12.

At Step 2, the ALJ determined that Odom suffered from the following severe impairments: morbid obesity, degenerative disc disease, ischemic heart disease, pulmonary embolism, and acute kidney injury. R. 12. The ALJ found that the other impairments alleged by Odom, including his migraine headaches, were nonsevere. R.12–14.

At Step 3, the ALJ found that none of Odom's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14–15. Thus, the ALJ next had to determine Odom's residual functional capacity.

The ALJ determined that Odom had the residual functional capacity to perform sedentary work with certain additional limitations:

- Odom can only occasionally push or pull bilaterally;

- Odom can only occasionally climb ramps or stairs;

- Odom can never climb ladders, ropes, or scaffold;

- Odom can only occasionally stoop, kneel, crouch, or crawl;

- Odom can frequently reach bilaterally;

- Odom can tolerate no exposure to excessive vibration;

- Odom can only occasionally be exposed to extreme cold and extreme heat;

- And Odom can never be exposed to workplace hazards such as moving mechanical parts and high, exposed places.

R. 15.

At Step 4, the ALJ found that Odom could still perform his past relevant work as a drafter. R. 18. So, without reaching step 5, the ALJ determined that Odom was not disabled under the Social Security Act. R. 18–19.

Odom requested an Appeals Council review of the ALJ's decision. R. 1–6. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g);

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   Legal Analysis

Odom makes three arguments for why the ALJ erred in finding him not disabled. First, Odom argues that the ALJ improperly evaluated the medical evidence from his physicians. Next, Odom asserts that the ALJ failed to properly evaluate his credibility. Finally, Odom contends that the ALJ erred when he classified Odom's migraine headaches as a nonsevere impairment. The court addresses each argument in turn.

### A.   The ALJ properly evaluated the opinion evidence and treatment notes.

Odom's first argument centers on the ALJ's evaluation of opinion evidence from Dr. Thomas Tyner, a doctor at UAB Primary Care, Gardendale, and treatment records from Odom's treating physicians at Southside Pain Specialists. According to Odom, each of these doctors is a treating source whose medical opinion is entitled to substantial or considerable weight absent good cause to discount his opinion. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause

6

to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quotation omitted)

1.    <u>Dr. Tyner</u>: On July 31, 2018, Dr. Tyner completed a functional capacity assessment of Odom in which he stated that Odom could sit for only 2 hours during an eight-hour workday and could lift no more than 10 pounds. R. 939–40. The ALJ gave Dr. Tyner's opinion little weight because (1) it stemmed from a one-time examination of Odom, and (2) the ALJ found Dr. Tyner's opinion inconsistent with Odom's medical records. R. 18.

ALJs are not required to defer to the opinions of one-time examiners like Dr. Tyner. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Recognizing this, Odom argues that the ALJ still needed to defer to Dr. Tyner's opinion as the opinion of a treating source because Dr. Tyner worked at the same clinic as Odom's primary care physician, Dr. Fuqua, and had access to his records.

The court rejects Odom's argument for three reasons. First, Odom cites no legal authority that says that the opinions of non-treating physicians who review the records of treating sources are entitled to deference. Second, Odom cites no evidence that shows that Dr. Tyner reviewed the records of Dr. Fuqua or any other doctor who treated Odom. Instead, he merely speculates that Dr. Tyner must have reviewed Dr.

Fuqua's records because he "clearly had access to [them]" and Odom testified at the ALJ hearing that he sometimes saw doctors other than Dr. Fuqua at the UAB clinic. Finally, when specifically asked whether he was Odom's "regular treating physician," Dr. Tyner checked "no." R. 939. Thus, substantial evidence supports the ALJ's finding that Dr. Tyner is not a treating source.

So the court considers the ALJ's evaluation of Dr. Tyner's opinion evidence under the standards that the Eleventh Circuit typically applies to opinion evidence from non-treating physicians. As already noted, the opinion of a one-time examiner is not entitled to deference. *McSwain*, 814 F.2d at 619. And an "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Having reviewed Odom's medical records, the court finds that substantial evidence supports the ALJ's decision to give Dr. Tyner's opinion only little weight. For example, in both August 2016 and May 2018, Dr. Fuqua classified Odom's heart condition as stable. R. 432–38, 1010–18. And although Odom continued to suffer from back pain and had moderate to severe degenerative changes throughout his lumbar spine, several of the treatment notes from Southside Pain Specialists suggest that he ambulated normally. R. 317, 323, 534, 554. Odom also reported to his pain management doctors that he was responding well to his pain medications. R. 533, 551. A reasonable person reviewing these medical records could conclude, as the

ALJ did, that they contradict Dr. Tyner's functional capacity assessment. So substantial evidence supports the ALJ's decision to afford Dr. Tyner's opinion little weight.

2.   <u>Pain management specialists</u>: Odom also argues that the ALJ mischaracterized the treatment notes of his pain management doctors at Southside Pain Specialists when he used them to support the finding that Odom could perform sedentary work. As Odom notes, examinations from these doctors consistently revealed lumbar spine tenderness, extension and flexion decreases, and pain elicited by motion. R. 522, 528, 540–41, 573. And some treatment notes suggest that Odom had limited ambulation and shortness of breath. R. 527–28, 321–22. But other treatment notes from the Southside Pain Specialists show that Odom had normal ambulation, no shortness of breath when walking or lying down, and no appearance of being in distress. R. 322–23, 531–35, 553–54.

The ALJ carefully reviewed the treatment notes from Odom's doctors when making his residual functional capacity assessment. R. 15–17. And it is not this court's function to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178. Having reviewed the Southside Pain Specialists' treatment notes, the court finds that a reasonable person could have interpreted the evidence as the ALJ did. So Odom has

failed to show that the ALJ reversibly erred when evaluating the notes from his pain management doctors.

## B.     The ALJ properly evaluated Odom's subjective pain testimony.

Odom next argues that the ALJ erred in discrediting his subjective pain testimony. When a claimant relies on subjective testimony regarding pain to support a disability claim, the ALJ must apply the two-step "pain standard":

1. The claimant must present "evidence of an underlying medical condition"; and, if he does,

2. The claimant must either

   a. Present "objective medical evidence confirming the severity of the alleged pain," or

   b. Show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). When an ALJ refuses to credit the claimant's subjective pain testimony, "he must articulate explicit and adequate reasons" for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

At the ALJ hearing, Odom testified that he could no longer work as a drafter because his back problems prevent him from sitting still for more than ten minutes at a time. R. 55. He also stated that "always having to get up and walk around" decreased his productivity at work and that he could not go out into the field to complete surveys. R. 56. And Odom reported that despite his use of morphine and

10

oxycodone for breakthrough pain, he typically needs to lay down at least five hours during the typical workday. R. 60–61.

The ALJ found that Odom's medically determinable impairments could reasonably be expected to give rise to these symptoms. R. 16. But the ALJ determined that Odom's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

Having reviewed Odom's medical records and the evidence of his daily life activities, the court finds that substantial evidence supports the ALJ's credibility determination and finding that Odom had the residual functional capacity to perform sedentary work. As discussed above, several of the treatment notes from Southside Pain Specialists state that Odom ambulated normally, was not in distress, and reported that he was responding well to his pain medication. Odom's treatment notes also reflect that his heart condition is stable and that he is no longer taking medication for recurrent pulmonary embolism. R. 1013–14. Plus, as the Commissioner points out, Odom's testimony about his daily life activities reveals that he can groom himself and cook simple meals. R. 56–58.

A reasonable person could view this record evidence and find that it conflicts with Odom's statements about the intensity, persistence, and limiting effects of his symptoms. So even though the court may have made a different credibility

determination than the ALJ, the ALJ did not reversibly err. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [Odom's] testimony, but whether the ALJ was clearly wrong to discredit it.").

### C.    Substantial evidence supports the ALJ's finding that Odom's migraines are a nonsevere impairment.

Finally, Odom argues that the ALJ erred when he classified Odom's migraine headaches as a nonsevere impairment.[1] A medical impairment (or combination of impairments) is severe when the impairment "significantly limit[s] the claimant's physical or mental ability to do basic work [activities]." *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (quoting 20 C.F.R. § 404.1520(a)(4)(ii) & (c)). "An impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's physical or mental ability to work, irrespective of

---

[1] Odom's reply brief also asserts that the ALJ erred when assessing the severity of his obesity. According to Odom, the Commissioner's response brief's failure to address the ALJ's classification of Odom's obesity as level II, rather than level III, must mean that the Commissioner concedes that the ALJ should have classified Odom's obesity as level III (or extreme) obesity. Doc. 12 at 3 n.3. But Odom's initial brief makes no argument that the ALJ erred by classifying his obesity as level II. *See* Doc. 9. So the court does not fault the Commissioner for failing to address the obesity level assigned by the ALJ in its response brief. And by failing to raise his obesity-related argument in his initial brief, Odom has forfeited the right to argue that the ALJ erred in classifying his obesity as level II obesity. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 n.4 (11th Cir. 2004).

age, education, or work experience." *Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 419 (11th Cir. 2015).

In support of his argument that the ALJ should have classified his migraines as a severe impairment, Odom points out that (1) he testified at the ALJ hearing that he gets migraines "at least once every few weeks"; (2) he reported in June 2016 that his migraine headaches were throbbing/pounding in nature and sometimes accompanied by an aura, vomiting, and nausea; (3) he informed his doctor in September 2016 that he suffered from migraines at least once a week; (4) he reported in July 2017 that he had suffered four migraines in the past month; and (5) treatment notes from October 2018 state that Odom continued to suffer from migraines. R. 59, 321, 572, 533, 962. But Odom reported to his doctors that his headaches decreased with treatment. R. 321, 565, 583. Plus, Odom received only conservative treatment with medication to alleviate his migraines. R. 802–03. So the court finds that substantial evidence supports the ALJ's determination that Odom's migraines were only a mild impairment. *See Bridges v. Bowen*, 815 F.2d 622, 626 (11th Cir. 1987) (affirming ALJ's determination that claimant's impairments were nonsevere when his impairments were "amenable to medical treatment").

## IV.   Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards

and that substantial evidence supports the ALJ's decision. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

      **DONE** and **ORDERED** this December 7, 2020.

                                    _____
                                    **COREY L. MAZE**
                                    UNITED STATES DISTRICT JUDGE